# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DELLIA ROMERO,

    Plaintiff,

v.

CITY OF CLOVIS, CLOVIS POLICE DEPARTMENT, and JEFFREY SWINFORD, Individually and in His Prior Official Capacity,

    Defendants.

No. 1:17-cv-00818-PJK-GBW

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the court on Defendants City of Clovis, Clovis Police Department, and Jeffrey Swinford's First Motion for Summary Judgment (ECF No. 28). Upon consideration thereof, the court finds the motion is well taken and should be granted.[1]

## Background

In this removal case, Plaintiff Dellia Romero brought federal and state law claims seeking damages against Defendants City of Clovis and its police officer Jeffrey

---

[1] This matter was transferred to the undersigned on May 15, 2019. ECF No. 42.

Swinford. In the complaint, Ms. Romero alleges that she "said that [the officer] could not give her [fiancé] [Ruben Sepulbeda] a trespass notice because he had done nothing wrong." Compl. at 3, ¶ 9 (ECF 1-1). She "refused to provide her identification after several requests by [the officer] . . . and got into the front passenger seat of her vehicle." Id. at ¶ 10. The officer then arrested her for concealing her identity. Id. at ¶ 11. Ms. Romero challenges the arrest and its execution.

A.    **Legal Framework**

In an effort to state the facts, it is useful to review the summary judgment standard. A motion for summary judgment should be granted when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The court views the factual record and reasonable inferences that may be drawn from it in the light most favorable to the nonmoving party. Banner Bank v. First Am. Title Ins. Co., 916 F.3d 1323, 1326 (10th Cir. 2019).

"There is, however, an added wrinkle in this case: existence in the record of a video[] capturing the events in question." Scott v. Harris, 550 U.S. 372, 378 (2007). When that is the case, a court should "view[] the facts in the light depicted in the video[]." Id. at 381. A factual dispute will only preclude summary judgment where it is both (1) genuine, i.e., concerns evidence on which "a reasonable jury could return a verdict for the nonmoving party," and (2) material, i.e., is "relevant" and "necessary" to resolution of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). When video evidence is such that "no reasonable jury could believe" one party's version of events, there is no "genuine issue for trial" and summary judgment is

appropriate, regardless of that party's "different stor[y]." Scott, 550 U.S. at 380. As in Scott, "[t]here are no allegations or indications that this video[] was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened." Id. at 378.

Given this framework, the description of the facts that follows is drawn only from (1) the undisputed material facts revealed in the parties' briefing for the summary judgment motion,[2] and (2) the clear record presented by Officer Swinford's lapel video. To the extent the parties' briefing revealed additional disputed facts not presented in the court's description of the operative facts, the court finds those disputed facts are not material.

**B.    Relevant Facts**

On July 4, 2015, Kyle Ackley, a security guard at the North Plains Mall in Clovis, New Mexico, called the Clovis Police Department to request that two individuals — a man and a woman — be removed from the mall. Undisputed Material Fact ("UDMF") No. 1, Defs.' Mot. Summ. J. at 1. The Police Department sent Officer Jeffrey Swinford to the mall to handle Mr. Ackley's request. UDMF No. 2. When Officer Swinford arrived, Mr. Ackley informed him that a man had been asked to leave the mall because he

---

[2]  The following numbered facts from Defendants' statement of material facts were undisputed in Ms. Romero's response: 1, 2, 4, 5, 13, 14 & 15. Ms. Romero disputed portions of facts 3, 6, 7, 8, 9, 10, 11 & 12. But the disputes regarding facts 3 and 6–12 are not "genuine disputes" because those facts are primarily characterizations of events that are also depicted on the recording from Officer Swinford's lapel video. In light of Scott v. Harris, the court relies on the clear video evidence rather than the parties' "two different stories."  550 U.S. at 380.

3

had been "mad-dogging" a store employee, i.e., glaring at the employee in order to intimidate, and that a woman with him (thought to be the man's wife) was suspected of shoplifting. Lapel Video of Officer Jeffrey Swinford at 0:00–0:10 (ECF No. 36, Ex. D) (sealed).

While Officer Swinford was speaking with Mr. Ackley, Ruben Sepulbeda[3] approached them and wanted to speak with Officer Swinford. Id. Officer Swinford identified Mr. Sepulbeda as the man Mr. Ackley had reported for mad-dogging, and Officer Swinford informed Mr. Sepulbeda that the mall was requesting he be removed and issued a trespassing notice. Id. at 0:35–1:30. As Officer Swinford was filling out a criminal trespass notice to issue to Mr. Sepulbeda, Plaintiff Dellia Romero approached him. Id. at 3:04. She passed by Officer Swinford and asked, "Why are we getting a trespass? We didn't do nothing wrong here." Id. at 3:04–3:06.

Officer Swinford responded, "Let me see your I.D." Id. at 3:06–3:08. Ms. Romero turned away from Officer Swinford and headed toward her car as she answered, "No." Id. at 3:08–3:09. She proceeded to walk to her car a few feet away. Id. at 3:09–3:12. Officer Swinford followed her and said, "Ma'am, I'm not playing this game with you. Let me see your I.D." Id. She refused and climbed into the car's front passenger seat. Id. at 3:12–3:13. Officer Swinford asked her again, "Ma'am, let me see your I.D." Id. at 3:15–3:17. She answered, "No." Id. at 3:17.

Officer Swinford then grabbed her wrist and began to pull her out of the vehicle.

---

[3] Initially, the complaint and answer spelled his name "Sepul*v*eda," but later pleadings by the parties spell it "Sepul*b*eda."

Id. at 3:19–3:27.  Ms. Romero attempted to pull her arm away and protested, "Don't you fucking hold on to me like that."  Id. at 3:25–3:27.  At this point, Officer Swinford told Ms. Romero, "Ma'am, you're under arrest."  Id. at 3:28–3:30.  She responded, "You're not arresting me!  For what?!"  Id. at 3:30–3:32.  Officer Swinford then pulled her arms behind her back and warned her to "stop resisting."  Id. at 3:32–3:38.  Officer Swinford placed Ms. Romero in handcuffs and told her, "You are now under arrest for resisting and concealing your I.D."  Id. at 3:39–3:54.

The officer then proceeded to walk Ms. Romero toward his patrol car, where he pinned her against the hood of the vehicle.  Id. at 3:54–4:04.  Ms. Romero protested, "You don't fucking have to hold my hand like that."  Id. at 3:58–4:00.  In the video she appears to push away from Officer Swinford's grip.  Id. at 4:00.  She continued to protest that Officer Swinford did not need to hold her as forcefully as he did.  Id. at 4:00–4:30.  Officer Swinford told her several times to "stop," to "relax, ma'am," and to "stop tensing up."  Id.  At one point, Ms. Romero protested at how tightly Officer Swinford had secured the handcuffs and said, "it's hurting me right here."  Id. at 5:05–5:07.  She was then placed in the back of Officer Swinford's patrol car.  Id. at 5:30–5:45.[4]  Ms. Romero was ultimately charged with resisting an officer, concealing her identity, and disorderly

---

[4]  Ms. Romero alleges that, after their interaction had concluded, Officer Swinford embellished or gave a false description of the events in recounting them to another officer.  Pl.'s Resp. Mot. Summ. J. at 4, ¶ 9 (citing Lapel Video at 6:01–8:56).  Officer Swinford's account of the facts is irrelevant because the video clearly captures the events.  Ms. Romero claims that this belies the officer's credibility and makes his account unreliable, but it is unnecessary to rely on his account given the video.

5

conduct.[5]  UDMF No. 14.

Ms. Romero sued the City of Clovis, the Clovis Police Department,[6] and Officer Swinford[7] in New Mexico state court for false arrest and imprisonment, assault and battery, the violation of her civil rights, and negligent supervision and training.  Compl. at 1.  She requested compensatory and punitive damages and attorneys' fees.  Id. at 5.  Defendants removed the case to this court because Ms. Romero's § 1983 claim presents a federal question.  28 U.S.C. §§ 1331, 1441(a).  Defendants moved for summary judgment, arguing (1) Ms. Romero's § 1983 claim fails because (a) Officer Swinford did not violate Ms. Romero's rights or is at least entitled to qualified immunity and (b) the City is not responsible for an unconstitutional policy or custom, and (2) Defendants are entitled to judgment as a matter of law on her state law claims.  See generally Defs.' Mot. Summ. J.

## Discussion

The court will address three sets of claims.  First, the § 1983 claims against

---

[5] The criminal complaint was later dismissed without prejudice.  Notice of Dismissal (ECF No. 31-2).

[6] As Defendants correctly note, the Clovis Police Department is not a proper defendant to Ms. Romero's § 1983 claim.  New Mexico law vests *municipalities* with the power to sue and be sued, not their constituent departments, which are merely administrative arms of the City.  N.M. Stat. Ann. § 3-18-1; see also Henry v. Albuquerque Police Dep't, 49 F. App'x 272, 273 n.1 (10th Cir. 2002) (unpublished).

[7] Ms. Romero sued Officer Swinford "individually and in his prior official capacity."  Compl. at 1.  Because he is no longer employed by the City, an official capacity suit for prospective relief is moot.  See Kentucky v. Graham, 473 U.S. 159, 165–66 (1985).

6

Officer Swinford. These include Ms. Romero's Fourth Amendment claims for illegal arrest and for excessive force. Second, the § 1983 claims against the City. And finally, the claims against both Officer Swinford and the City brought under New Mexico state law.

A.   **Federal Claims Against Officer Swinford**

   1.   **Illegal Arrest Claim**

The Fourth Amendment protects the "right of the people" to be free of "unreasonable searches and seizures." U.S. Const. amend. IV. A warrantless arrest by an officer requires probable cause to believe a crime had been committed. Quinn v. Young, 780 F.3d 998, 1006 (10th Cir. 2015).

Ms. Romero was arrested for "concealing identity," a misdemeanor under New Mexico law.[8] The Tenth Circuit has held that, in order to arrest someone for concealing identity, "there must be reasonable suspicion of some predicate, underlying crime" that would justify the initial demand for identification. Keylon v. City of Albuquerque, 535 F.3d 1210, 1216 (10th Cir. 2008). Accordingly, the court must answer two questions: First, did Officer Swinford possess reasonable suspicion that Ms. Romero had committed

---

[8] Defendants also argue Ms. Romero's arrest was justified because she committed the crimes of resisting arrest, N.M. Stat. Ann. § 30-22-1(D), and disorderly conduct, N.M. Stat. Ann. § 30-20-1(A). The court does not need to address these alternative grounds for her arrest because it determines Officer Swinford had arguable probable cause on the concealing identity charge. See Fogarty v. Gallegos, 523 F.3d 1147, 1156 (10th Cir. 2008) (noting the central question is "determining which crime, or crimes, defendants could objectively and reasonably have believed [the plaintiff] committed"); Apodaca v. City of Albuquerque, 443 F.3d 1286, 1289 (10th Cir. 2006) ("All that matters is whether [the defendant] possessed knowledge of evidence that would provide probable cause to arrest [the plaintiff] on *some* ground.").

7

or was committing a crime such that his demand for her identification was legal? In other words, did the request for identification come in the context of a valid Terry stop? See Terry v. Ohio, 392 U.S. 1, 30 (1968). And second, did he then have probable cause to arrest her for concealing identity when she refused to comply with his demand for her identification? See Atwater v. City of Lago Vista, 532 U.S. 318, 354–55 (2001) (describing the standard for arrest for a misdemeanor committed in the officer's presence). The court addresses each question in turn.

    a.    Reasonable Suspicion

First, Ms. Romero argues Officer Swinford stopped her and demanded her identification without reasonable suspicion. A law enforcement officer may briefly detain and question a person whom the officer reasonably suspects of engaging in criminal activity. United States v. McHugh, 639 F.3d 1250, 1255 (10th Cir. 2011). "Reasonable suspicion" necessary for a Terry stop is a lower threshold than probable cause necessary for arrest, but also must be "more than an inchoate and unparticularized suspicion or hunch." United States v. Sokolow, 490 U.S. 1, 7 (1989) (internal quotation marks omitted). Reasonable suspicion exists where an officer can point to "specific and articulable facts" and reasonable inferences drawn from those facts that would lead an officer to believe "criminal activity 'may be afoot.'" Sokolow, 490 U.S. at 7 (quoting Terry, 392 U.S. at 30). An officer need not rule out the possibility of innocent conduct and may initiate a Terry stop even if it is more likely than not that the individual is *not* involved in anything illegal. United States v. Pettit, 785 F.3d 1374, 1379–80 (10th Cir. 2015). Reasonable suspicion is not an onerous standard; it exists so long as the totality of

8

the circumstances would justify a reasonable officer in stopping a person to "verify or dispel the officer's suspicion in a short period of time." Florida v. Royer, 460 U.S. 491, 500 (1983).

Here, the court agrees with Defendants that the facts available to Officer Swinford were sufficient to give rise to reasonable suspicion that Ms. Romero may have engaged in illegal activity.[9] When Officer Swinford was dispatched to the mall, he was told that the mall wished to have one or more suspects removed. When he arrived, mall security (Mr. Ackley) told him that a man needed to be removed for mad-dogging and that a woman with him was suspected of shoplifting. Officer Swinford identified the man who approached him in the parking lot as Mr. Sepulbeda — the man accused of mad-dogging. So, when Ms. Romero approached the officer and asked him why they were being given a trespassing notice since they had not done anything wrong, it was a reasonable inference that she might be the woman associated with Mr. Sepulbeda. At that point, Officer Swinford had justification to detain and question her until he could verify or dispel his suspicion that she might be the woman reported by the mall for suspected shoplifting and trespassing along with Mr. Supelbeda. The demand for identification, then, came within the scope of a valid Terry stop. See Keylon, 535 F.3d at 1216.

    b.    Probable Cause

The next question is whether Officer Swinford's reasonable suspicion regarding

---

[9] Rather than resolve this question on "clearly established law," the court finds in its discretion it is simpler to answer the merits of the constitutional question. See Green v. Post, 574 F.3d 1294, 1299 (10th Cir. 2009) (noting a court may resolve a case on either step of the qualified immunity test).

Ms. Romero grew into probable cause to arrest her. Because this is a § 1983 case, though, Ms. Romero cannot prevail just by showing that Officer Swinford lacked probable cause — qualified immunity requires her to show that it was "clearly established" that he lacked probable cause. See Pearson v. Callahan, 555 U.S. 223, 232 (2009) (describing the two-step qualified immunity standard: first, violation of a right; second, demonstration the right was clearly established). Put another way, she must show that Officer Swinford did not even *arguably* have probable cause to arrest her; that no reasonable officer would have thought he could validly arrest her under the circumstances. See A.M. v. Holmes, 830 F.3d 1123, 1139–40 (10th Cir. 2016) (explaining "arguable probable cause" and noting that an officer may be reasonably mistaken about probable cause and entitled to qualified immunity). If the court determines that probable cause arguably existed, the court may resolve the case on that ground. Id. at 1139.

Even assuming arguendo that Officer Swinford was mistaken about the existence of probable cause, it was a reasonable mistake. New Mexico law makes it a misdemeanor to "conceal" one's identity, which consists of "concealing one's true name or identity, or disguising oneself with intent to obstruct the due execution of the law or with intent to intimidate, hinder or interrupt any public officer" in the course of his duties. N.M. Stat. Ann. § 30-22-3. New Mexico courts have construed § 30-22-3 to "require[] a person to furnish identifying information immediately upon request or, if the person has reasonable concerns about the validity of the request, so soon thereafter as not to cause any 'substantial inconvenience or expense to the police.'" State v. Dawson, 983

10

P.2d 421, 424 (N.M. Ct. App. 1999) (quoting In re Suazo, 877 P.2d 1088, 1096 (N.M. 1994)). One conceals her identity by "refraining from stating any identity at all" and "concealment for any period of time, however short, violates the statute." Id. at 423.

Ms. Romero openly refused to provide Officer Swinford with her identification and walked away to her car rather than remain and answer questions while the subject of a Terry stop. Given the facts known to him at that time and under the law as it was established at the time of Ms. Romero's arrest, Officer Swinford could reasonably have believed that she violated § 30-22-3. A.M., 830 F.3d at 1140. His lawful demand for her identification gave rise to an obligation on her part to comply and furnish her identification "immediately" or "soon thereafter," but instead she refused multiple requests. Dawson, 983 P.2d at 424; see also Mocek v. City of Albuquerque, 813 F.3d 912, 927 (10th Cir. 2015). Additionally, it is established that even relatively minor crimes committed in an officer's presence can give rise to probable cause for an arrest. Atwater, 532 U.S. at 354–55; 3 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 5.1(b) (5th ed., October 2018 update).

"Qualified immunity balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson, 555 U.S. at 231. Where, as here, an officer in the field could at least reasonably believe he had the authority to make an arrest, courts "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." Harlow v. Fitzgerald, 457 U.S.

800, 807 (1982) (internal quotation marks omitted) (quoting <u>Butz v. Economou</u>, 438 U.S. 478, 506 (1978)).  Accordingly, Officer Swinford is entitled to qualified immunity from suit on Ms. Romero's illegal arrest claim.

    2.    **Excessive Force Claim**

Ms. Romero claims that the "battery" committed against her while she was "wrongfully in custody" violated substantive due process under the Fourteenth Amendment.  Pl.'s Resp. at 15–16.  The Fourth Amendment, however, is the framework that governs claims that excessive force was used in the process of making an arrest. <u>Estate of Booker v. Gomez</u>, 745 F.3d 405, 419 (10th Cir. 2014).  Because Ms. Romero's claim is about the use of force during her arrest, the court will construe Ms. Romero's substantive due process claim as a Fourth Amendment excessive force claim.

The Supreme Court has long recognized that the ability to use at least *some* amount of force — or the threat of force — is part and parcel of the power to make an arrest.  <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989). So, the question is one of degree: Was the degree of force used "objectively reasonable" under the circumstances?  <u>Id.</u> at 397.  Answering that question requires courts to "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."  <u>Scott</u>, 550 U.S. at 383 (internal quotation marks omitted) (quoting <u>United States v. Place</u>, 462 U.S. 696, 703 (1983)). And like Ms. Romero's illegal arrest claim, this claim brings with it the burden of defeating qualified immunity.  Not only must she show that Officer Swinford's use of force went beyond what was objectively reasonable, she must also show that it was

12

*clearly* excessive under the law as it was established at the time of her arrest. See A.M., 830 F.3d at 1134–35 (stating the qualified immunity standard).

For a right to be "clearly established," it must be clear to a reasonable officer that his conduct would violate the law. Id. at 1135. In general, to show a right was clearly established a plaintiff will need to identify a decision from either the Supreme Court or the Tenth Circuit that was on the books at the time of her arrest and that held an official violated the law under circumstances substantially similar to her own. See Grissom v. Roberts, 902 F.3d 1162, 1168 (10th Cir 2018). But Ms. Romero has not identified *any* decision regarding the use of excessive force, let alone one decided by the Supreme Court or the Tenth Circuit that held an officer violated the law under similar circumstances. Merely alleging that her handcuffs may have caused her pain or left her with some de minimis injury is insufficient. See Cortez v. McCauley, 478 F.3d 1108, 1129 & n.24 (2007) (en banc). She must demonstrate, under the totality of the circumstances, that the force inflicted on her and her resulting injuries were disproportionate to the force needed to arrest her. See Fisher v. City of Las Cruces, 584 F.3d 888, 894 (10th Cir. 2009). She has not done so and accordingly she has not carried her burden to demonstrate Officer Swinford violated a clearly established right. Compare id. at 898 (requiring "a plaintiff [to] establish some non-de minimis actual injury"), with Pl.'s Resp. Mot. Summ. J., Ex. 4 (ECF No. 31-4) (photographs of Ms. Romero's injuries). That is fatal to her claim. Officer Swinford is entitled to qualified immunity as to excessive force.

**B.     Federal Claims Against the City: Unconstitutional Policy or Custom, Failure to Train**

While Ms. Romero's claims against the City are not subject to a qualified immunity defense, they face the separate challenge of showing the City maintained an unconstitutional official "policy or custom." See, e.g., City of Canton v. Harris, 489 U.S. 379, 385–86 (1989); Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690 (1978). A municipality is not liable under § 1983 merely because it employed a tortfeasor; it may only be held liable where there is a causal link between the employee's tort and the municipality.[10] See Monell, 436 U.S. at 690. In other words, a municipality may be held liable only where the execution of its own policy inflicted the plaintiff's injury. Los Angeles Cty. v. Humphries, 562 U.S. 29, 35–36 (2010). When the employee's unconstitutional action was authorized by the municipality, the employee's acts are fairly attributable to the municipality itself. Simmons v. Uintah Health Care Special Dist., 506 F.3d 1281, 1284 (10th Cir. 2007). A plaintiff bears the burden of demonstrating that a municipality both had an unconstitutional policy or custom, and the policy or custom caused her injury. Pyle v. Woods, 874 F.3d 1257, 1266 (10th Cir. 2017).

Ms. Romero has failed to meet her burden to show the City maintained an unconstitutional policy or custom that caused Officer Swinford to violate her rights. No

---

[10] This standard assumes that a plaintiff has shown a municipal employee committed a constitutional violation. A claim against a municipality would also fail where there was no underlying constitutional violation. See Jones v. Norton, 809 F.3d 564, 575 (10th Cir. 2015). Even assuming for the sake of argument that Officer Swinford's actions were unconstitutional, Ms. Romero's claims against the City still fail.

14

reasonable jury could find for her on the facts she has presented to the court.  See Harris, 489 U.S. at 388–89 (describing when inadequate training constitutes a municipal "policy").  She has not shown either a formal policy enacted by the City that is unconstitutional, an informal custom that amounts to a widespread practice on the City's part, an illegal action by a final policymaker, or a deliberately indifferent failure to adequately train the City's police officers.  See Pyle, 874 F.3d at 1266.  Her only support for the failure to train claim is an excerpt from the City's police department field manual and her barebones legal conclusions.  Accordingly, the City is entitled to summary judgment on the federal claims against it.

**C.   State Law Claims**

Under 28 U.S.C. § 1367, district courts may exercise supplemental jurisdiction over state law claims that are "so related" to a party's federal claims that they "form part of the same case or controversy."  Id. § 1367(a).  But a district court may also "decline to exercise supplemental jurisdiction" if "the district court has dismissed all claims over which it has original jurisdiction."  Id. § 1367(c).  When Defendants removed this dispute to federal court, Plaintiff's § 1983 suit formed the basis for original federal jurisdiction.  Those federal claims, however, will be dismissed.  The Tenth Circuit has advised that when only state law claims are left for decision, the court should usually exercise its discretion to decline supplemental jurisdiction.  See VR Acquisitions, LLC v. Wasatch Cty., 853 F.3d 1142, 1149–50 (10th Cir. 2017).  Accordingly, the court will remand Plaintiff's state law claims to New Mexico state court.

NOW, THEREFORE, IT IS ORDERED that (1) Defendants' First Motion for Summary Judgment (ECF No. 28) filed May 7, 2018, is granted in part as to all federal claims, and (2) Plaintiff's state law claims are remanded to the Ninth Judicial District Court of the State of New Mexico.

DATED this <u>31st</u> day of May 2019, at Santa Fe, New Mexico.

<u>/s/ Paul Kelly, Jr.</u>
United States Circuit Judge
Sitting by Designation

Counsel:

Daniel R. Lindsey, Daniel R. Lindsey Law Firm, Clovis, New Mexico, for Plaintiff.

Mark D. Standridge and Cody R. Rogers, Jarmie & Rogers P.C., Las Cruces, New Mexico, for Defendants.